## Case No. 2,193.

### BURR v. McEWEN.

[Baldw. 154.] [1]

Circuit Court, D. Pennsylvania. April Term, 1830.

POWERS, DUTIES, AND LIABILITY OF TRUSTEES — ACCOUNTS—COMPENSATION.

1. Where land was conveyed on an undefined trust, the trustee is bound to manage it with the same diligence as he does his own property, but will not be held to a stricter rule.

[See Prevost v. Gratz, Case No. 11,407; Jenkins v. Eldridge, Id. 7,268; Barney v. Saunders, 16 How. (57 U. S.) 535; Williams v. Gibbes, 20 How. (61 U. S.) 535.]

2. A trustee is bound to pay taxes on the trust property, if in funds. He may advance his own money for taxes, so long as he retains the property, and charge the amount upon it.

[Cited in Keely v. Weir, 38 Fed. 294.]
[See Sherman v. Savery, 2 Fed. 505.]

3. He is not answerable to the representatives of the cestui que trust for any improvements made by his directions, or with his approbation, out of the proceeds of sales.

4. A trustee may charge the trust with fees paid for professional advice, touching the execution of the trust, but not for professional services rendered in the litigation of his accounts.

5. A trustee is, in Pennsylvania, entitled to a compensation for his services by way of commission, though there is no provision to that effect in the trust deed, or by agreement of parties.

[Cited in Askew v. Odenheimer, Case No. 587.]

6. A trustee is not chargeable for not renting property which was not productive when it came to his hands; nor bound to inclose land which was open, unless directed so to do by the cestui que trust.

7. A trustee who acts in good faith in selling trust property, is justified in selling for the fair market value, though it may not be equal to what its peculiar situation would make it worth to one whose land it adjoins.

8. Where the trust is general, and no mode of sale prescribed, the trustee may sell at private sale.

9. A trustee cannot be charged for any negligence or maladministration of the trust which is not set forth in the bill, but it may be considered by the court in fixing his compensation, by way of offset, not as a substantive claim.

In equity. The following is the substance of the case and matters in controversy. In 1799, Samuel Blodjet conveyed to the defendants [McEwen, Hale, and Davidson] fifty acres of land in the county of Philadelphia, for the nominal consideration of 10,000 dollars, no part of which was paid, nor was there any definite agreement made as to the terms on which the conveyance was made. Blodjet was indebted in a large sum to the defendants and others, which he was unable to pay; he had commenced the erection of a mansionhouse, with out-buildings, on the property; but had left them unfinished, and in a state of dilapidation. The property was uninclosed, wholly unproductive, unsaleable,

[1] [Reported by Hon. Henry Baldwin, Circuit Judge.]

and at the time of the conveyance, not supposed to be worth more than the amount due the defendants, with their responsibilities incurred for Blodjet. They held the property, paid the taxes and managed it as they would their own; making advances to him and his family from time to time, who occupied the buildings, such as were habitable. Blodjet furnished plans of improvements, which were executed by defendants, partly in his lifetime, and partly after his death, but pursuant to direction he had given. After some time the property rose in value. In 1814 the defendants made sales to an amount sufficient to pay themselves their debt, responsibilities, advances and expenses, leaving a great part of the property unsold, including the house and out-buildings which they finished out of the proceeds of the sales. When they found that the property would be more than sufficient to meet the objects of the conveyance, the defendants first began to inquire into the nature of their title; having never considered the property as theirs, except on the terms of the implied trust on which they took the conveyance. They consulted counsel, as well as the friends of the family, among others the trustees of Mrs. Blodjet, as to the course which they ought to pursue, stating to them fully all the circumstances of the case. They were advised, that as Blodjet's affairs were wholly deranged, and his children minors, they ought to do no more than to execute the trusts especially confided to them, leaving the resulting trusts to be adjudicated by some competent tribunal. They pursued this course, having no other claim to the property than to be compensated for their services, and any balance of account due them, paid. They waited till they should be called on to give an account of the trust and be discharged from it. The complainant having administered on the estate of Mr. Blodjet, filed the present bill, praying for a discovery of the terms of the trust, with an account, so as to enable him to bring a suit at law to recover the money due from defendants. In their answer, they admit the trust, set forth an account, claim compensation for their services, a lien for the balance due them, and are willing to close the trust under the direction of the court. After exceptions to the answer and an amended answer, an amended bill was filed, praying for a conveyance of the legal title, to certain persons who had purchased the equitable right of Blodjet under a judgment against him. In this answer the defendants submitted to the court to decree according to equity. The accounts were referred to an auditor, and two other persons selected by the parties, who reported a balance due to the defendants, to which exceptions were filed by the complainant on grounds noticed in the argument. No allegation of fraud, or breach of trust for their own benefit, was charged on the defendants; none of the sales made by them were objected to before the auditors,

except the sale of a small piece of ground sold to Mr. Powell at private sale, at an inadequate price, as was alleged. This piece of ground was situated between the old Lancaster road and the turnpike road leading to the same place, extending from the intersection of the two roads, where it was an acute angle, to the western line, where it was about forty feet in width. By the vacation of the old road, this triangular piece lay between Mr. Powell's other land and the turnpike. By purchasing it, he extended his front to the turnpike, which made it very valuable to him; but to any person who did not own the ground back of it, it was of little value, being of an unequal depth, and too narrow for any useful purpose.

Mr. Wurtz, for complainant.

The conveyance to the respondents was in the nature of a mortgage, being to indemnify them for their liabilities for the grantor, and to reimburse them for their payments; the respondents are subject to the same accountability as mortgagees. All the objects of the trust were accomplished by the sales made previous to, and in June, 1814, from which time they have no right to make any charges; they having then in their hands, from the proceeds of the sales, a sum sufficient to cover all their liabilities. Their account for improvements and buildings erected on the estate cannot be allowed, unless such disbursements were authorized by the terms of the trust, were for the benefit of the estate, necessary for the execution of the trust, or were made by the direction of Mr. Blodjet the grantor. In any other case they could incur no other expenses than were necessary to prevent the property from becoming dilapidated, or for such repairs and improvements as were necessary for its preservation. Green v. Winter, 1 Johns. Ch. 26, 39; 1 Ves. Sr. 327. At all events, as their rights to the property ceased when so much as was necessary to indemnify them had been raised by sales, they had no right to sell in order to pay for such erections; or if such expenditure was authorized, the respondents ought to account for rents and profits, as it was their duty to have rented the buildings. No objections are made to any charges incurred in execution of the trust, but we object to the charges for taxes paid after June, 1814, and fees paid to counsel for defending this suit. Trustees must pay costs where they litigate for commissions, or deny their liability for interest on money applied to their own use. 1 Johns. Ch. 536. Sums paid for stating the account by executors, or fees to counsel for advice as to the mode of stating it, are not allowable because not for the benefit of the estate. 9 Serg. & R. 204. We also object to the charge of commissions, as being exorbitant and contrary to the rules of courts of equity. 2 Madd. Ch. Pr. 156; 1 Cruise, Dig. 556, tit. 12. A mortgagee is not entitled to commissions on rents (1 Madd.

Ch. Pr. 534; 3 Atk. 518); and unless provided for in the deed of trust, the trustee can charge only a per diem for his services and his travelling expenses (1 Johns. Ch. 29). In this state commissions are allowed to executors, but the highest is five per cent.; where the services have been small, and attended with little risk, it is less. 9 Serg. & R. 204, 223. The sale to Mr. Powell was a private one; the respondents are therefore accountable for the actual value of the piece sold, especially as it was a violation of the trust to sell after all the debts were paid or provided for. They must also account not only for rents received, but such as might have been raised by the use of proper diligence (1 Madd. Ch. Pr. 527; 2 Fonbl. Eq. 432, note); being answerable for negligence, though there was no corrupt motive (6 Ves. 488). We are also entitled to interest on the balance in their hands from July 1814, when it ought to have been invested (1 Johns. Ch. 508); unless it is shown not to have been used, and kept unproductive for sufficient reasons (Fox v. Wilcocks, 1 Bin. 194; Say v. Barnes, 4 Serg. & R. 116).

Mr. Binney, for respondents.

Most of the objections to the conduct and account of the respondents were first made before the master and auditors, without being stated in the bill, which is not consistent with the rules of chancery practice. The bill is a peculiar one; it is framed on the ground of the faithful execution of the trust, and a desire on the part of respondents to be discharged from its further execution. No confederacy is charged; no fraud or breach of trust is specially imputed; its object is a discovery of the terms and condition of the trust, and the production of the accounts connected with its execution. The answer of the respondents is full to the whole prayer of the bill, and being responsive to its allegations must be taken as true, till contradicted. [Fitzsimmons v. Ogden] 7 Cranch [11 U. S.] 19. The amended bill filed after the answer and account prays only for a reconveyance, an account of commissions claimed, and for new parties; in the answer to which, the amount of commissions was submitted to the court, who referred it to auditors. The effect of these proceedings was to lull the respondents to sleep, and takes them by surprise by being called on to account for rents never received, during a space of twenty-six years. It is the duty of a complainant to state his injury, how it was done, and the remedy he asks precisely (Mitf. Eq. Pl. 37, 40); to put in issue whatever is intended to be proved, so as to apprise the other party of what he must be prepared to meet (Coop. Ch. Pr. 7). The claim set up in an answer, must also be supported by proof of such specific claim, and cannot be supported by proof of a different one; the proof must be confined to the allegations made in the bill or answer.

Linker v. Smith [Case No. 8,373]; Prevost v. Gratz [Id. 11,407]; Clarke v. Turton, 11 Ves. 240. The pleadings must be amended before hearing, or the party cannot be allowed to prove what is not alleged; whether the hearing is before the court or a master, it is only on the matters in issue, and cannot be more expanded than the allegations of the parties. Consequa v. Fanning, 3 Johns. Ch. 595. Every breach of trust relied on must be charged in the bill, so that the respondent may have the benefit of his answer on oath, denying or explaining them; if it is permitted to make them for the first time on a reference of the account, he would be deprived of this right. In this case the administrator may call the trustees to account for money of the estate in their hands, but they are not accountable to him for the sacrifice of the real estate, when it can be no injury to him; the trustees are accountable only to the heir on this subject. The bill alleges no trust to rent the house or land, or any breach of trust in not doing it; they had no authority to make improving leases, and might have been answerable, if a sale had been defeated by a lease to a tenant in possession, for a trustee must not deprive himself of the power of executing the trust. Mr. Blodjet lived fifteen years after the creation of the trust, was conusant of the conduct of the trustees, without objecting to it, and it would not be permitted to him to set up a charge so stale as that now made for not renting the property; the court would presume that he was satisfied with the manner in which the trust had been executed, especially on a bill which does not impeach the fidelity of the trustee. Arden v. Arden, 1 Johns. Ch. 313. In the sale to Mr. Powell the trustees exercised their judgment and discretion honestly; the property was of no value to any person but him, and as there could be no competition among bidders at a public sale, it was most prudent to make a private sale; if it was made in good faith the court will not hold them accountable for more than was received, whatever may be the opinion of witnesses as to its value during a rage for speculation. 2 Madd. Ch. Pr. 144. With respect to the money expended in improvements, the answer avers it to have been made according to Mr. Blodjet's plan, in his lifetime, and with his approbation. The finishing an unfinished building was in the nature of repairs, not coming within the rule of equity which forbids the building or making expensive improvements by a trustee, but in this case was a primary object of the trust, after payment of debts. 1 Bin. 495; 2 Madd. Ch. Pr. 134, 143; 2 Johns. Ch. 76; 5 Ves. 843; 1 Vern. 144; Amb. 219. A trustee has a right to charge counsel fees for advice in the execution of the trust, in order to keep them safe, as well as all other reasonable expenses in closing his accounts, where he has been faithful.

Willis, Trustees, 147; 2 Fonbl. Eq. 176, 177; 2 Madd. Ch. Pr. 158, 159. This court has always allowed compensation to trustees; in the case of Prevost v. Gratz they allowed a commission of ten per cent. [Case No. 11,407.]

Joseph R. Ingersoll, in reply.

The bill was filed in ignorance of the state or nature of the trust; it was for discovery, information, and an account of what had been done under the deed of trust, which are furnished by the answer. But as they declined to settle their account, or to specify the amount of their commissions, a reference to a master was necessary. No detailed account was exhibited till 1821, to which we could file exceptions; those now made are not to any detail, but on principle; and were made as soon as it appeared that the account was made upon principles which we could not admit. We stand as defendants, against whom an account is set up, as a lien on an estate which ought to be conveyed back unincumbered; it is therefore competent in us to answer these charges, by the nature of the trust or the manner of its execution, by maladministration or extravagant charges, which we may prove or disprove without raising a charge against the trustees. The trust was not to protect or improve the property, but a pledge put into the hands of the respondents for their security; no particular services were required from them in order to give a value to the property, nor did they stipulate for any compensation; so that though their services may have been meritorious, they were voluntary, and equity holds them to their contract as to compensation. The case is now heard for the first time on an argument; there was none before the auditors, they are merely the clerks, agents or officers of the court. [Field v. Holland] 6 Cranch [10 U. S.] 21; 2 Madd. Ch. Pr. 501. The respondents claim extra compensation for their services, which we resist because they were not rendered. We also set up against it their not renting the property or recovering rent from those who occupied it, as well as for not selling when the property was at its highest price, which are fair offsets to their claims for extra services in the way of commission. This trust was like a bailment of personal property to pay a debt, in which the trustee is bound only to ordinary care, and entitled only to ordinary compensation. 2 Ld. Raym. 909. When any thing beyond that is claimed, the services must be extraordinary. The expenditure on the buildings was not authorized by the terms of the trust; it was converting personal property into realty, which a trustee is not authorised to do; he can charge the trust only for repairs and necessary expenses. 1 Ves. Sr. 461; 3 P. Wms. 100; 1 Vern. 435; 1 Atk. 480; 1 Johns. Ch. 39; 1 Bin. 495. Compound interest ought to be charged on the balance in their hands from June, 1814. 1 Johns. Ch. 620; 5 Johns.

Ch. 497. This court has decided at the present term that counsel fees for prosecuting a suit cannot be included in the damages assessed by a jury. The trustees were bound to avail themselves of the opportunities of selling, during the period when the property was at a high price, and to expose it to public competition; they cannot defend themselves by saying that it was during a rage for speculation, or that the triangular piece was of no value to any one but Mr. Powell. It was their duty to put it into the market and test its value by a public sale. and they must be held accountable for such price as, from the evidence, the court may think it would have brought at a public sale.

BALDWIN, Circuit Justice. The state of the pleadings in this cause is such as would not have admitted of the wide range taken in the argument, if the parties had confined themselves to the allegations of the bill; but as it is desired by both, that all matters which have been discussed, shall be now finally decided, without regard to the frame of the pleadings, the court will consider the whole case.

There is no controversy about the existence, or the general objects of the trust, though they were undefined, resting in an implied confidence that certain things should be done, which seem to have been well understood between the parties, as is evidenced by their conduct, till the death of Mr. Blodjet, in 1813 or 1814. The trust was a peculiar one in all respects; it was highly beneficial to Mr. Blodjet, by preventing a sacrifice of the property for his debts, as well as having it as a fund, on the faith of which his and the pressing wants of his family were supplied; but to the defendants it was a continued burthen, without any resulting benefit, except indemnity and reimbursement. In its execution the trustees have acted with acknowledged fidelity, without even the imputation of any view to their own profit, in those matters wherein they are charged with negligence, or the unauthorized application of the proceeds of the property. During the life of Mr. Blodjet, every thing was confided to the discretion of the defendants, he was conusant of their proceedings without any complaint, nor till the filing of the bill, does there appear to have been any objection to their conduct by any persons claiming the benefit of the resulting trust. This is therefore not one of those cases where a court of equity is called on to correct the abuses of a trust, by persons having in their hands the estates of minors, or others who cannot supervise the management of their own property, or where productive property has been so mismanaged as to call the trustee to a strict account; still less where the trust fund has been impaired or lost. In this case. the trustees after having paid debts far exceeding the

value of the whole property at the creation of the trust, held a portion for the heirs of Mr. Blodjet, more valuable now than the whole was then; a court of equity cannot overlook these considerations. During the first fifteen years of the trust, the trustees were accountable only to Mr. Blodjet, for the manner of its execution; neither his personal representative, nor his heirs, can call them to any account for what they did with his approbation: he had the sole right to direct plans for the disposition and improvement of the property, which they could carry into effect after his death, in perfect conformity with the conditions of the trust. From the nature and terms of the trust, and the relative position of the parties, the trustees were bound to act with judgment, discretion and fidelity, in the management and disposition of the property; with such diligence and care, as they would bestow upon their own; but they ought not to be held answerable for acts or omissions which would not be deemed culpable in managing their own concerns, even when acting according to their own judgment. For their conduct, which was known to Mr. Blodjet, and not disapproved, or for any thing done pursuant to his directions, they are in no wise accountable, however imprudent or injudicious it may have been.

The first item in the account of the defendants, which is objected to, is the payment of taxes accruing after 1814. As taxes are a lien upon property which is unoccupied, for which it may be sold (9 Serg. & R. 112); or if occupied, the payment enforced by a distress upon the tenants (10 Serg. & R. 255); the trustees were bound to pay them, if in funds, or if not, were at liberty to pay them, it being evidently for the benefit of cestui que trust. This objection is therefore overruled.

It is next objected that the defendants have charged for improvements on the premises, made after the death of Mr. Blodjet. In their answer, the trustees aver that these improvements were made pursuant to the directions of Mr. Blodjet, and according to his plans; this averment is supported by the evidence, without any contradictory proof. These improvements were the finishing the buildings commenced by him before the trust arose; they were made after the payment of the debts charged upon it, and when there could be no solid objections to complete the arrangement projected by Mr. Blodjet, for the accommodation of himself and family, and the ultimate division of it among his children. This objection is also overruled. Insuring the buildings against fire, was a proper precaution, especially when they were unoccupied; we have during the present term decided that it is a proper charge. This exception is therefore disallowed.

It is next objected that the defendants have charged for fees paid to counsel for defend-

ing this suit. A charge for professional advice, as to the manner of executing a trust, is undoubtedly proper; but a charge for professional services in conducting or defending a suit, is on a different footing. At the present term we have decided, that a plaintiff in an action of trespass for taking goods, cannot recover counsel fees paid for prosecuting a suit in a case where compensatory damages only could be recovered (Atlantic Ins. Co. v. Conard [Case No. 627]); not because such charge may not have been reasonable, but because we were aware of no rule of law to justify it. If we could feel at liberty to sanction such a charge in any case, it would be in this; the principle however has not been recognized in equity, that a trustee shall be allowed his professional expenses in the litigation of his accounts, however fair they may be found on investigation. This exception is therefore allowed, so far as a charge is made for fees to counsel in defending this suit. The next exception is to the charge of a commission for services. Whatever may be the rule in courts of equity in England, or in other states, it is well settled in Pennsylvania, that all trustees are entitled to compensation for their services in the execution of the trust, whether there is any provision or agreement touching it or not. The amount of such compensation depends on the nature of the trust, and the fund or property; as the execution of the trust is more or less burthensome to the trustee, the compensation varies accordingly. In this case we think the most liberal rate of compensation ought to be allowed, taking into view the situation of the property of Mr. Blodjet and his family, the conduct of the trustees, and the ultimate result of their proceedings, which has proved highly beneficial to those now entitled to the property. As the defendants have specified no sum which they claim for their services, but submitted its amount to the court, we have felt justified in looking to all the circumstances of the case and parties, which, though they afford no reason for withholding from the trustees what is justly due to them, are not without their influence in inducing us to disallow a part of what the auditors have deemed a proper compensation for valuable and disinterested services.

The complainant next objects to the account, that the defendants are not charged with rents. As neither the original or amended bill contains any charge for the maladministration of the property, we are not at liberty to consider this exception in any other respect than as an offset to the claim for compensation. There is no pretence that any rents have been received, or any evidence that the renting the property formed any part of the trust; its objects were a sale to pay heavy debts, to preserve and improve the residue for Mr. Blodjet's family. The land was uninclosed, Mr. Blodjet gave no directions to inclose or rent it; after the trustees had been enabled by sales to effect all the purposes of the trust, they held the property, subject to the decree of a competent court, for the final execution of any resulting trust. Under such circumstances, it was neither their duty, nor would it have been proper for them to have incumbered the property with a lease, as they did not know at what time they might be called on to execute a deed and surrender the possession. Besides, the residence of Mr. Blodjet in one of the buildings, with his acquiescence in the conduct of the trustees in suffering the property to remain in statu quo, would conclude his representatives from making this charge, either as a substantive claim, or an offset to services otherwise entitled to compensation. The subsequent occupation of the house by Mrs. Blodjet, the silence of her trustees, and the whole conduct of the trustees, and cestui que trusts, make such a claim inequitable in every view. This exception is therefore disallowed.

The next is, for not charging the trustees with the alleged value of the piece of ground sold to Mr. Powell; not because any more was received by them than they have accounted for, but because they sold for an inadequate price, nor is any collusion between them and Mr. Powell pretended. This exception comes within the same rule as the preceding one; the charge having been reserved till the hearing, can be considered only as an offset to compensation. From the account, it appears that this piece was sold at the rate of 10 dollars the square perch, or 1,600 dollars an acre, nearly double the price at which another part of the property was laid off in payment of a debt due the heirs of Mr. Sergeant. That the sale was made in good faith, and for a fair price, cannot be doubted; the trustees were not bound to sell at auction, but were left at their discretion as to the time and mode of sale; though it was their duty to sell for its value, they were under no legal or equitable obligation to be governed by the value which the peculiar situation of this triangular piece gave it, to enable Mr. Powell to have a front on the turnpike. A court of equity will not hold trustees accountable for not exacting the uttermost from the necessities of others, they will hold a trust fairly executed, if the trustee has converted real estate into money, at its fair value in the market. We have not been satisfied, that a better price could have been obtained by a sale at auction, or that this piece of property was not sold at its full value. This exception is also overruled.

The remaining exception is for not charging the defendants with interest on a balance in their hands in July, 1814. Had the trustees made a charge for their services at the date of the account, it would have made the balance in their favour; or if they had charged interest on their advances prior to the sales, it might have been proper to open an interest account: as none has been open-

ed, and this matter has entered into our consideration in fixing the amount of compensation, this exception is disallowed. The report of the auditors is therefore confirmed, with the exception of the allowance of 400 dollars for counsel fees in defending this suit, and the amount of compensation, which, under the circumstances of this case, is limited to 1,500 dollars.